**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**

---------------------------------------------------------------------

| |
|---|---|
| **EXPORT DEVELOPMENT CANADA,** | \| |
| | \|   **Civil Case No. 4:19-cv-00207-ALM** |
| **Plaintiff,** | \| |
| **v.** | \| |
| | \| |
| **HANOVER SPECIALTIES, INC., d/b/a** | \| |
| **VITRITURF,** | \| |
| | \| |
| **Defendant.** | \| |

------------------------------------------------------------------

**DEFENDANT'S MOTION TO CHANGE VENUE**

### SUMMARY OF ARGUMENT

Pursuant to 28 U.S.C. § 1404(a), Defendant Hanover Specialties Inc. ("Hanover") moves for an order transferring this action to the US District Court for the Eastern District of New York for the 1) convenience of the parties and witnesses, 2) to allow Hanover to consolidate this matter with a litigation currently pending in the Eastern District of New York based on the same facts and circumstances as this present matter and 3) in the interest of justice.

This is a case about a binder product which is a glue for rubber that was used in numerous installations by Hanover. Many of these installations were done on the East Coast and are failing. These failures are resulting in hundreds of thousands of dollars in damages for replacement in addition to significant damages to the reputation of Hanover, a leader in the industry. Hanover

was trying to resolve this matter with Les Revetements Polyval Inc. ("Polyval"), a Canadian corporation and the assignor to Export Development Corporation ("EDC"), also a Canadian corporation, concerning the defective product that Polyval provided when Polyval took it upon itself to assign authority to EDC to file suit against Hanover. Hanover has filed a separate action against Polyval in the Eastern District of New York, which is pending and which is based on the same facts and circumstances that will arise for all defenses in this matter. This case should be transferred to The Eastern District of New York −because

- The proposed transferee district is the location of Hanover's corporate headquarters and therefore the Hanover's "home district";
- Critical third-party facts and witness for installations that have failed are within the subpoena power of the Eastern District of New York, but not the Eastern District of Texas;
- Even if these critical third-party fact witnesses were willing to appear at trial in the Eastern District of Texas, the Eastern District of New York is far more convenient for them;
- All known witnesses employed and those no longer employed by Hanover are located in the Eastern District of New York;
- No known third-party fact witnesses are located in the Eastern District of Texas;
- To preserve judicial economy. An action is currently pending against Polyval Inc in the Eastern District of NY under case 2:19-cv-03732. Polyval is the assignor to EDC resulting in the present action. Allowing the transfer of this matter to the Eastern District of New York will allow Hanover an opportunity to consolidate the cases which are based on the same circumstances and facts thereby preserving judicial economy

By contrast, EDC is a Canadian corporation with no connection to this District or State and indeed, it would be beneficial to its witnesses, who are largely located in Quebec and New York, to have this case transferred to New York.

Taken together, these facts demonstrate that the interests of justice would be served by a transfer to the Eastern District of New York.  These same facts also demonstrate that the plaintiffs and their witnesses have little cognizable interest in having this action litigated in

the Eastern District of Texas.

Because the relevant factors weigh heavily in favor of transferring this action to the Eastern District of New York, the Court should exercise its discretion under 28 U.S.C. § 1404(a) to transfer the action to that forum.

## BACKGROUND FACTS

1.     **Parties and Factual Background.**

Plaintiff EDC is a Canadian Crown Corporation with its principal offices and place of business at 150 Slater St., Ottawa, Ontario, Canada K1A 1K3. EDC is the successor in interest to Polyval, a Canadian corporation, pursuant to the assignment agreement by and between EDC and Polyval dated February 14, 2019.  Defendant Hanover is a New York corporation and maintains, with its principal place of business in New York, corporate headquarters in Bohemia, New York in the Eastern District of New York and has warehouses in various states including Texas.  See, **Exhibit 1** hereto, Complaint in NY action; Noskin Decl. at ¶ 2.

Polyval is Canadian based company engaged in the business of, among other things, providing high–performance industrial strength protective coatings to its customers across the globe. Hanover installs (PIP) Poured in Place Safety Surfacing (cushioned, seamless flooring surfaces for playgrounds and other multi-purpose systems across the country).  Hanover utilizes the polyurethane "binder," offered by Polyval with other materials to create the rubber layer of the seamless cushioned surfaces. Polyval's and Hanover's business relationship began in or around 2015. Hanover would rely on the expertise of Polyval for "binder" it required for the poured in place surfacing Hanover installed. Polyval was aware of Hanover's use of its product and would modify its "binder" for Hanover's needs with the understanding that the binder must be suitable for the application required: poured in place safety surfacing. **Ex. 1**,  ¶¶7-

9.  Hanover would order the product by telephone and Polyval would send them an invoice.  As relevant to this suit, Polyval billed approximately $541,107 for the binder that it provided to Hanover and of that approximately 45% of the binder was shipped to New York and 33% of the binder was shipped to Texas with the remaining binder being sent to other states.  Noskin Decl. at ¶ 5.

Hanover relied on Polyval, its chemists, its sales personnel and others Polyval employees to supply a product that was suitable for use in their poured in place safety surfacing.  On several occasions there were issues with the viscosity of the product.  On numerous occasions Hanover would express concern with the "binder" in situations where the poured in place surfacing was lifting off the ground.  Hanover's customers complained to Hanover orally and in writing, and Hanover expressed its concern to Polyval. The typical response from Polyval was that "The binder is the binder and that the problem must be with the installation." **Ex. 1**,  ¶¶10-12; Noskin Decl. at ¶ 8.

After the number of failures started increasing, Hanover conducted in house testing and discovered that the "binder" supplied by Polyval was not suitable for use in poured in place safety surfacing, creating a latent defect that would not appear until years after the installation. Hanover has already repaired jobs where this latent defect had emerged with costs exceeding two hundred thousand dollars. Hanover does over 300 installations per year and offers a 5-year warranty and based on the failures brought to Hanover's attention Hanover expects hundreds of jobs to fail as a result of the Polyval "binder" with costs of repair to estimated to be in the millions of dollars. **Ex. 1**,  ¶¶14-15. Most of the failing sites are in New York and its environs. Noskin Decl. at ¶ 6.  Hanover was in discussions with Polyval over the issues it was discovering in the installations where the Polyval binder was used when Polyval performed an assignment to

EDC who then filed suit against Hanover in the Eastern District of Texas.  A large number of Hanover employees were involved with Polyval's binder, including accountants, orderers, and installers.  Approximately twenty-seven Hanover employees have relevant information regarding the work performed and the materials used by Hanover on these job sites.  The installers performed the actual work and can testify as to how the work was performed, and what they experienced using the Polyval binder.  Other employees were responsible for packaging and shipping the materials to the job sites.  These employees can testify regarding the quality of the materials.  Other employees are Hanover's owner, managers and accounting staff.

Hanover's potential witnesses are as follows:

| Position | Name | Town of Residence | State | Employment Status |
|---|---|---|---|---|
| President | Steven Noskin | Frisco | NY | Current |
| Ordering | Anthony Escandon | Centereach | NY | Current |
| Accounting | Ivette Escandon | Centereach | NY | Current |
| Material | Rubi Hector | Central Islip | NY | Current |
| Installer | Jorge Mejia | Westbury | NY | Current |
| Installer | Brian Mejia | Westbury | NY | Current |
| Installer | Omar Mejia | Westbury | NY | Current |
| Installer | Saul Lopez | Westbury | NY | Current |
| Installer | Jorge A Henriquez | Amityville | NY | Current |
| Installer | Armando Hernandez | Westbury | NY | Current |

| Installer | Erwin Hernandez | Amityville | NY | Current |
|-----------|-----------------|------------|-----|---------|
| Installer | Daniel Perez | Hicksville | NY | Current |
| Installer | John Posillo | Bay Shore | NY | Current |
| Installer | Joseph Poscillo | Bellport | NY | Current |
| Installer | Abner Rodriguez | Central Islip | NY | Current |
| Ordering | Maria Guaquetta | Ronkonkoma | NY | Former |
| Installer | Henry Pacheco | Westbury | NY | Former |
| Installer | Tomas Hernandez | Farmingdale | NY | Former |
| Installer | Marco Florian | Bay Shore | NY | Former |
| Installer | Alfonzo Cano Mendoza | Westbury | NY | Former |
| Installer | David Garcia | Westbury | NY | Former |
| Installer | Hector Cruz | Westbury | NY | Former |
| Installer | Ryan Hayes | Westbury | NY | Former |
| Installer | Jose Chavez | Westbury | NY | Former |
| Installer | Rafael Sanchez | Bay Shore | NY | Former |
| Installer | Christopher VaVargas | Bay Shore | NY | Former |

Noskin Decl. at ¶¶ 15-18

## 2.          Procedural History.

Earlier this year, EDC filed this action arising out of the approximately \$540,000 that

6

Hanover allegedly owed Polyval.  <u>See</u>, **Exhibit 2** hereto, Complaint in this action.  The lawsuit alleges breach of contract, along with various other common law claims and also a claim for attorneys' fees under Tex. Civ. Prac. & Rem. Code § 38.001.  Hanover filed an Answer.  Around the same time, Hanover filed an action against Polyval in the Eastern District of New York, where Hanover is headquartered, also for breach of contract and other common law claims. **Exhibit 1**.  In this case, the parties exchanged Rule 26(a)(1) disclosures and submitted a joint report to the Court, which it approved.  <u>See</u>, **Exhibit 3** hereto, EDC's Rule 26(a)(1) disclosures. EDC's disclosures reflected that their witnesses are virtually all located in New York and Quebec, Canada, which is about the third of the distance to New York than to Texas, with only Steven Noskin, Hanover's owner, and EDC's attorneys residing in Texas.  Mr. Noskin, however, is willing to fly to New York and has already committed to doing so given Hanover's case in New York.  <u>Noskin Decl.</u> at ¶¶ 19-21.

## ARGUMENT

### 1.    **Standard for Motions to Change Venue.**

Motions to transfer venue under 28 U.S.C. § 1404(a) require that courts apply a two-part test under Section 1404(a):  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Under § 1404(a) the moving party must show "good cause" for transfer, and this burden is satisfied "when the movant demonstrates that the transferee venue is clearly more convenient." <u>Realtime Data, LLC v. Morgan Stanley</u>, No. 6:09CV326-LED-JDL, 2010 WL 4274576, at \*2 (E.D. Tex. Oct. 28, 2010) (quoting <u>In re Volkswagen of Am., Inc.</u>, 545 F.3d 304, 314 (5th Cir. 2008) (en banc).

To determine whether to transfer venue, the Court must first decide whether this action "might have been brought" in the district to which transfer is requested. In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004). In other words, the Court must determine whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed. Id. Specifically, the Court must decide whether the transferee court would have jurisdiction over the matter. Crenshaw Enterprises, Ltd. v. Irabel, Inc., No. 1:17-CV-322, 2018 WL 6185991, at *5 (E.D. Tex. Jan. 18, 2018), reconsideration denied, No. 1:17-CV-322, 2018 WL 6220060 (E.D. Tex. Feb. 15, 2018).

Once the Court determines that the matter could have been filed in the transferee district, the Court must then decide whether the transferee district is a "clearly more convenient" forum. Cooktek Induction Sys., LLC v. I/O Controls Corp., No. 4:15-CV-548-ALM, 2016 WL 4095547, at *2 (E.D. Tex. Aug. 2, 2016). The facts of this case easily satisfy both of these criteria.

### 2. This Case Could Have Been Brought in the Eastern District of New York.

EDC could have brought this case in the Eastern District of New York. Hanover's principal place of business is in Bohemia, New York, which is situated directly in the Eastern District of New York and therefore the EDC could have filed this lawsuit in that district. Noskin Decl. at ¶ 2; Cooktek, 2016 WL 4095547, at *2 (noting that the case could have been brought in the transferee district because the defendant's place of business was in that district).

### 3. The Convenience of the Parties and Witnesses Warrants Transfer.

#### A. The Private Factors Heavily Point Towards Transfer.

Because this case "might have been brought" in the Eastern District of New York, this Court must then determine whether to exercise its discretion and transfer venue. In determining whether to do so, the Court should review "four non-exclusive "private" factors: (1) the relative

8

ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of willing witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious, and inexpensive." Cooktek, 2016 WL 4095547, at *3. These factors all point strongly towards transfer.

Factors two and three heavily factor transfer. "[These] factors will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue." ATEN Int'l Co. v. Emine Tech. Co., 261 F.R.D. 112, 124 (E.D. Tex. 2009). Hanover is headquartered in the Eastern District of New York and therefore virtually all of its witnesses, both current and former employees, are located in New York.[1] Noskin Decl. at ¶¶ 2,14-19. Abstrax, Inc. v. Sun Microsystems, Inc., No. 2:07-CV-333, 2009 WL 2824581, at *1 (E.D. Tex. Aug. 28, 2009) (finding that the location of the headquarters and witnesses supports transfer). These employees are required to testify concerning their experience ordering the binder, installing surfacing using the binder in question, and the problems that resulted from the defective binder. In particular, 11 of Defendant's anticipated former employee witnesses live in New York within 100 miles of the Eastern District of New York courthouse. It would be much more convenient for these witnesses to travel to the Eastern District of New York, within which they already reside, rather than travel to this Court well over 1,000 miles away. Further, the Eastern District of New York can subpoena these individuals, which this Court cannot do. Id. (noting that whether witnesses are within 100 miles of the transferrer and transferee venues is relevant to determining the convenience of the witnesses). The fact that the Eastern District of New York has subpoena power while this Court does not also favors transfer. Id. (noting that the

---

[1] The lone witness living in Texas is Steven Noskin, Hanover's owner, who regularly travels to New York and has committed to do so for this lawsuit.

"100 mile rule favors transfer (with differing degrees) if the transferee venue is a shorter average distance away from witnesses than the transferor venue.")   In addition, EDC's anticipated witnesses identified in their Rule 26(a)(1) disclosures all largely live in Canada or New York, with the lone exceptions being Hanover's owner, who has committed to traveling to New York, and EDC's attorneys whose convenience is not considered on a motion to transfer venue. See, **Ex. 3**, Noskin Decl. at ¶ 19.   TiVo Inc. v. Verizon Commc'ns, Inc., No. 2:09-CV-257, 2010 WL 11468564, at *6 (E.D. Tex. Sept. 17, 2010) ("The parties' attorneys are not a factor to be considered for transfer purposes").   Finally, no third-party witness resides in this District.  These facts all support transfer.

Considerations of expense also significantly favor transfer.  If Hanover's witnesses have to testify before this Court, Hanover or the witnesses will have to pay extensive costs, including airfare and possibly multiple days of hotel lodging.   Further, Hanover will lose significant productivity if over a dozen employees have to travel to this Court because travel time alone will take up more than a day.  Perhaps more importantly, the former employees that Hanover intends to call as witnesses will likely have to take off time from work, which may be a significant cost to them.  By contrast, virtually all of these costs can be saved if Hanover's witnesses testify in New York where they live.  Notably, even EDC's witnesses are located much more closely to the courthouse in New York than this Court.  EDC's primary witnesses are located in Quebec, which is fewer than 500 miles from New York, but over 1,500 miles from this Court.  Noskin Decl. at ¶ 20. This disparity is significant and allowing these witnesses to testify in New York will save EDC and its witnesses substantial expense.   Accordingly, these two factors strongly favor transfer.

Equally favoring transfer is the fourth factor, which analyzes the practical problems

involved in transferring the case.  "Practical problems include those that are rationally based on judicial economy."  <u>ATEN Int'l Co. v. Emine Tech. Co.</u>, 261 F.R.D. 112, 125 (E.D. Tex. 2009). "For the past half century, a number of courts, including the Fifth Circuit, have held that the existence of related litigation in a transferee court is a factor that weighs strongly in favor of a transfer."  <u>Realtime Data, LLC v. Morgan Stanley</u>, No. 6:09CV326-LED-JDL, 2010 WL 4274576, at *5 (E.D. Tex. Oct. 28, 2010).  Here, Hanover has filed an action in the Eastern District of New York against Polyval, EDC's assignor, which involves identical facts and legal issues as the case here. **Ex. 1**.  Hanover picked this forum because it is headquartered in the Eastern District of New York, almost all of its witnesses reside there, Polyval is closer to New York than Texas, and crucially, a plurality of the binder that Polyval shipped to Hanover – approximately 45% – was shipped to New York, while only approximately 33% was shipped to Texas.  Further, most of the failing sites are in the Eastern District of New York.  <u>Noskin Decl.</u> at ¶¶ 5-6, 14-18.  As such, the Eastern District of New York was natural choice of venue.  By contrast, EDC has no connection to Texas and no good reason to bring this case here.  It is a resident of Canada, its key witnesses live in Canada and New York, and a much smaller percentage of Polyval's goods were shipped to Hanover in Texas than to New York. Accordingly, this factor supports transfer.

Finally, the first factor, the availability of records, supports transfer as well.   All of the relevant documents, including invoices, correspondence, and similar documentation, are located in New York or potentially Canada. <u>Noskin Decl.</u> at ¶¶ 5, 7, 8, 13.  To the extent that these documents can be produced electronically, "whether documents may be produced electronically is no longer relevant in the convenience analysis."  <u>ATEN Int'l Co. v. Emine Tech. Co.</u>, 261 F.R.D. 112, 124 (E.D. Tex. 2009).  Further, the failing sites are largely located in New York or

nearby.  Noskin Decl. at ¶ 6.  Accordingly, this factor also favors transfer.

### B.  The Public Factors Point Towards Transfer.

The Court must also review various "public factors" in determining whether to transfer a case.  "The Fifth Circuit applies four non-exclusive public interest factors in determining a § 1404(a) venue transfer question: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of law or the application of foreign law."  Cooktek, 2016 WL 4095547, at *2.

In reviewing the administrative difficulties, courts look at the standard wait time in the various districts.  Cooktek, 2016 WL 4095547, at *2.  Although it appears that there is a longer wait time from filing to trial in the Eastern District of New York, the time from filing to disposition is similar in the two districts.  See, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2019.pdf  (8.7 months in the Eastern District of Texas, 8.6 in the Eastern District of New York).  In any event, "this factor is the most speculative, and in situations where several relevant factors weigh in favor of or against transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of those other factors."  Deep Green Wireless LLC v. Ooma, Inc., No. 2:16-CV-0604-JRG-RSP, 2017 WL 679643, at *6 (E.D. Tex. Feb. 21, 2017) (internal quotations omitted).  Accordingly, this factor is neutral.

The local interests point toward transfer.  Hanover is headquartered in the Eastern District of New York, and the claims in this case – that Hanover refuses to pay its vendors – affect Hanover's reputation.  SynQor, Inc. v. Ericsson Inc., No. 2:11-CV-54-DF, 2012 WL

12

12903079, at *6 (E.D. Tex. Feb. 6, 2012)  (noting that a claim regarding the reputation of the defendant establishes that the localized interest should be decided in the home district); IDQ Operating, Inc. v. Aerospace Commc'ns Holdings Co., No. 6:15-CV-781, 2016 WL 5349488, at *8 (E.D. Tex. June 10, 2016), report and recommendation adopted sub nom. Armor All/STP Prod. Co. v. Aerospace Commc'ns Holdings Co., Ltd, No. 6:15CV781, 2016 WL 5338715 (E.D. Tex. Sept. 23, 2016) ("Local interest may favor transfer when the transferee venue is home to a party because the suit may call into question the reputation of individuals that work and conduct business in the community.").  This factor therefore supports transfer.

The familiarity of the Eastern District of New York with the relevant law and the avoidance of conflicts of law also point towards transfer.  EDC asserts largely common law claims in this matter, and similar claims are regularly adjudicated in the Eastern District of New York.   The only Texas-specific claim in this lawsuit is EDC's claim for attorneys' fees under Tex. Civ. Prac. & Rem. Code § 38.001.  Although Hanover intends to argue that this statute does not apply in this case because the alleged oral contracts between it and EDC were formed in New York, the Eastern District of New York can adjudicate such claims.  See, e.g., Phillips 66 Co. v. TNT Petroleum, Inc., No. 15CV5938DRHSIL, 2017 WL 765884, at *6 (E.D.N.Y. Feb. 2, 2017) (awarding attorneys' fees under § 38.001).  Accordingly, these factors point towards transfer.

## CONCLUSION

This case does not belong in the Eastern District of Texas.  It belongs in the Eastern District of New York. A transfer to the Eastern District of New York would square with both common sense and fundamental fairness, particularly when the key third-party witnesses in this case are within the subpoena power of that Court (in contrast to this Court).  All of

Hanover's current employees and those no longer employed by Hanover, identified to date, that could provide critical testimony on Hanover's claims work in the Eastern District of New York.  Finally, no known third-party witnesses reside in this District.

For all these reasons, the Court should exercise its discretion and transfer this case to the Eastern District of New York.

Dated: New York, New York
      August 13, 2019           Respectfully submitted,

                    _____/s/_____
                    Michael Taubenfeld (admitted *pro hac vice*)
                    Counsel for Defendant
                    FISHER TAUBENFELD LLP
                    225 Broadway, Suite 1700
                    New York, NY 10007
                    Tel. 212-571-0700
                    Fax 212-505-2001
                    Email: michael@fishertaubenfeld.com

                    **ATTORNEYS FOR DEFENDANT**

## Certificate of Conference

The undersigned certifies that on July 1, 2019, counsel for Defendant conferred with counsel for Plaintiff regarding the content of this motion, and counsel for Plaintiff subsequently refused to consent to Defendant's request.

## Certificate of Service

I certify that a true and correct copy of the foregoing document was served in accordance with the Federal Rules of Civil Procedure on August 13, 2019, via CM/ECF, on the following:

Anthony J. Bégon, Esq.
State Bar No. 24092109
2323 Ross Avenue, Suite 1900
Dallas, Texas 75201
Telephone: (214) 740-1400
Telecopy: (214) 740-1499
abegon@bellnunnally.com

**ATTORNEYS FOR PLAINTIFF**


 /s/ Michael Taubenfeld
Michael Taubenfeld